IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs September 10, 2015

STATE OF TENNESSEE v. RAYMOND A. KLEIN

Appeal from the Circuit Court for Montgomery County
No. 41400576     Michael R. Jones, Judge

_____

No. M2014-02340-CCA-R3-CD – Filed February 9, 2016
_____

Raymond A. Klein ("the Defendant") proceeded to trial on one count of aggravated
sexual battery and was convicted as charged. On appeal, the Defendant argues that the
evidence was insufficient to support his conviction. Discerning no error, we affirm the
judgment of the trial court.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which ROBERT W.
WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Timothy Richter, Clarksville, Tennessee, for the appellant, Raymond Arthur Klein.

Herbert H. Slatery III, Attorney General and Reporter; Tracy L. Alcock, Assistant
Attorney General; John W. Carney, District Attorney General; and Kimberly Lund,
Assistant District Attorney General, for the appellee, State of Tennessee.

OPINION

*Factual and Procedural Background*

We will refer to the victim as "G.L." The Montgomery County Grand Jury
indicted the Defendant with two counts of aggravated sexual battery of G.L. The State
dismissed one of the counts prior to trial. Jennifer Taylor, the victim's mother, testified
that she, her children, and her then-boyfriend lived in Clarksville from October 2008 to
January 2011. Mrs. Taylor stated that her family was close with the Defendant's family
and they often socialized with them at the Defendant's residence—sometimes as often as
three or four times a week. The victim, G.L., often played with the Defendant's

daughter. G.L. would occasionally spend the night at the Defendant's home, and sometimes G.L.'s whole family would spend the night at the Klein home. Mrs. Taylor recalled that G.L. "adored" the master bathroom, which she referred to as the "Tinker Bell bathroom." Mrs. Taylor stated that G.L. would sometimes watch television in the master bedroom and that she had seen G.L. in the master bedroom with the Defendant.

In January 2011, G.L.'s family moved to Spartanburg, South Carolina. G.L. was five years old when they moved. After moving to Spartanburg, Mrs. Taylor began to notice some behavioral changes in G.L. Mrs. Taylor recalled one instance where she had to take G.L. to the doctor to treat an infection, and G.L. had to be held down by three people in order for the doctor to pull down G.L.'s pants to see the infection. Additionally, G.L. began to wet the bed and defecate on herself and at times would try to hide it from Mrs. Taylor by urinating in her closet. On another occasion, G.L. was spending the night at the home of one of her friends. The friend's mother was giving the girls a bath when the friend's mother's boyfriend returned to the house. G.L. "freaked out," and Mrs. Taylor had to bring her home. Mrs. Taylor questioned G.L. about this unusual behavior in October or November of 2012, and G.L. eventually told her that the Defendant had touched her inappropriately. In January 2013, Mrs. Taylor brought G.L. to the Child Advocacy Center in Spartanburg to speak with a social worker. The social worker conducted two interviews with G.L.

On cross-examination, Mrs. Taylor noted that their family had lived in a white house in Clarksville that had a trampoline in the backyard. She stated that the Defendant lived with his family in two houses while she knew them and neither of those houses had a trampoline in the backyard.

G.L., who was nine years old at the time of trial, testified that she knew there were some parts of her body that people were not supposed to touch. G.L. was given a diagram of a female child as viewed from the front. When asked if the diagram depicted any parts of her body that people were not supposed to touch, G.L. circled the diagram's chest and pelvic regions. G.L. explained that she called the pelvic area her "[p]rivate." When asked if anyone had ever touched her in an inappropriate place, G.L. marked an "X" over the drawing's vagina and identified the Defendant as the person who touched her there. G.L. recalled that the Defendant gave her a piece of candy and asked her to come into his bedroom and sit on his bed. The Defendant joined her on the bed, and they both watched television. G.L. stated that she was wearing purple pajamas with green frogs on them. While they were on the bed, the Defendant placed his hand inside the waistline of G.L.'s pajama pants and under her underwear and touched her "private part." G.L. stated that she knew he was touching her "private part" because she could feel it on her skin. The Defendant stopped touching her when G.L.'s mother called to G.L. from

the living room to tell her it was time to leave. G.L. did not remember why she did not immediately tell her mother that the Defendant had touched her.

On cross-examination, G.L. stated that she could not recall the colors of the wall in the Klein's master bathroom. She also could not describe the colors of the sheets or bedding on the bed in the master bedroom. G.L. could not remember telling the social worker that the touching happened in a white house. However, G.L. stated that there was a trampoline behind the house where the touching occurred. G.L. also explained that the area of her body that she considered her "privates" extended from her belly button down to her knees. However, she said that someone would not be touching her private part if they touched her hip. Additionally, the following exchange occurred:

Q: When you say that [the Defendant] was touching your skin, is it possible that he was rubbing your belly button?

A: It could be possible.

Q: But not your knees, right?

A: (no audible response)

Q: If you touch someone's belly button, do you call that your private?

A: Yes sir.

G.L. maintained that the Defendant touched her only one time and stated that she could not remember whether she told the social worker that the Defendant had touched her more than once.

The Defendant played for the jury the videos of G.L.'s interviews from the Child Advocacy Center. The videos were admitted as prior inconsistent statements of G.L. Statements made by G.L. in the interviews which were inconsistent with her trial testimony are as follows: G.L. stated that the Defendant touched her twice; the first time she did not tell her mother but waited until the Defendant did it a second time; after the second time, she told her mother "right away" while they were still at the Defendant's house; and she could not remember whether the Defendant touched her underneath her clothes.

The Defendant testified that there was one occasion where G.L., G.L.'s brother, and the Defendant's daughter were in the master bedroom watching television. The Defendant's daughter and G.L.'s brother were sitting on either side of the Defendant in the bed; G.L. was sitting on the other side of her brother. Everyone was under a blanket. While they were in the bed, the Defendant gave each of the children a piece of candy. At

some point, G.L.'s brother "climbed over" G.L. to go to the bathroom. While G.L.'s brother was in the bathroom, G.L. "slipped" over on the bed to sit next to the Defendant. When G.L.'s brother returned, the Defendant placed his hand in the space between his leg and G.L.'s legs to move her over so that G.L.'s brother could return to his original spot on the bed. The Defendant stated that he may have brushed G.L.'s hip as he tried to move G.L. The Defendant denied ever touching G.L.'s privates or ever touching her under her clothes. The Defendant stated that G.L. did not try to "squirm" away from him. The Defendant could not recall G.L. being in his bed any other time.

The jury found the Defendant guilty of aggravated sexual battery, and the Defendant was sentenced to nine years' incarceration. The trial court denied the Defendant's motion for new trial. This timely appeal followed.

*Analysis*

On appeal, the Defendant argues that the evidence was insufficient to support his conviction. Specifically, the Defendant contends that the evidence failed to show that the Defendant touched G.L.'s genital area, groin, inner thigh, buttock, or breast because G.L. used the term "private part" to refer to any area between her belly button and her knees. Additionally, the Defendant asserts that the jury could not have found that the touching was for the purpose of or could reasonably be construed to be for the purpose of sexual gratification because the Defendant was not touching himself at the time of the alleged touching and there was no testimony "that would construe his intent." The State argues that the evidence was sufficient to support the verdict. We agree with the State.

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978), superseded on other grounds by Tenn. R. Crim. P. 33 as stated in State v. Moats, 906 S.W.2d 431, 434 n.1 (Tenn. 1995). This court will not reweigh the evidence. Id. Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. Bland, 958 S.W.2d at 659; Tuggle, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view

of the evidence and all reasonable inferences that may be drawn therefrom." State v. Vasques, 221 S.W.3d 514, 521 (Tenn. 2007).

As charged in the indictment, "[a]ggravated sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by the victim accompanied by any of the following circumstances: . . . [t]he victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4) (2010). As defined in the code,

> "Sexual contact" includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification[.]

Tenn. Code Ann. § 39-13-501(6) (2010). "'Intimate parts' includes the primary genital area, groin, inner thigh, buttock or breast of a human being." Tenn. Code Ann. § 39-13-501(2) (2010).

In this case, G.L. testified that the Defendant asked G.L. to sit on his bed and then placed his hand underneath her pajama pants and underwear to touch her "private." As noted by the State in its brief, taken in the light most favorable to the State, "the evidence shows that the [D]efendant lured G.L. into his bedroom with candy, got into the bed with her, placed his hand inside her pajama pants and underwear and touched the skin of her 'private part.'" She stated that she could feel his hand on her skin. On a diagram, G.L. circled the pelvic area to indicate what she considered her "private." When asked to identify where she had been touched on the diagram, G.L. drew an "X" over the diagram's vagina. During cross-examination, the jury heard G.L. admit that her definition of "private area" could include anything between her belly button and her knees. Additionally, the jury heard the Defendant's explanation that he brushed G.L.'s hip and place his hand in the space between her legs and his effort to move her in the bed. By convicting the Defendant, the jury credited G.L.'s testimony and resolved the question of fact as to where the Defendant touched G.L. We will not reweigh their determination on appeal. See Cabbage, 571 S.W.2d at 835. Further, even though there was no evidence that the Defendant was fondling himself, the evidence was sufficient for the jury to reasonably construe that he placed his hand inside G.L.'s pants and underwear and touched G.L. for the purposes of sexual gratification. Finally, both parties acknowledge that G.L. was less than thirteen years old at the time of the offense. The evidence was sufficient to support his conviction for aggravated sexual battery. The Defendant is not entitled to relief.

*Conclusion*

For the aforementioned reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE